******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring. I agree with the majority that the trial court abused its discretion by instructing the jury regarding consciousness of guilt on this record and that the error was harmless under the circumstances. I also agree with part III B of the majority opinion, which imposes procedural rules limiting the use of the consciousness of guilt instruction in future cases. I write separately because my agreement with the majority is qualified in two respects.

First, based largely on the concerns raised by Justice D'Auria in part I of his concurring and dissenting opinion, I do not agree with those aspects of the majority opinion in which the majority expresses reluctance to exercise this court's supervisory authority in the present case on the basis of limitations imposed by the doctrines of supervisory authority or stare decisis. In light of the cogent discussion of these issues in the dissenting opinion, it is unnecessary to further elaborate the reasons that these two legal doctrines create no impediment to our exercise of supervisory authority over the consciousness of guilt jury instruction. If we were to determine, on the merits, that this instruction adversely impacts the administration of justice in Connecticut courts, then we would have not merely the right, but the responsibility, to exercise our supervisory authority to remedy the harm. If not us, then who? And, if we were to find—as we do in this case—that the instruction, though improper, did not cause harm in this particular case, our cases make it clear that we can adopt a new rule for prospective application only. See, e.g., *State* v. *Carrion*, 313 Conn. 823, 852, 100 A.3d 361 (2014).

Second, because I see substantial merit in the abolitionist argument set forth in part II of the concurring and dissenting opinion, I wish to qualify my endorsement of the reformist approach adopted by the majority regarding the continued availability of a modified consciousness of guilt instruction for use on a much more restricted basis. I join the majority in this holding because I am hopeful that the reform works and provides sufficient

guidance to trial courts charged with the task of limiting use of the instruction to those unusual cases in which it is truly necessary. It is difficult for me to conceive of a situation in which the instruction would be needed, and neither the state nor the majority has supplied an illustrative hypothetical, but I am willing to accept that the instruction might someday find its application. If this court, in the future, concludes that this reform has not served its intended purpose, or has resulted in new or unforeseen problems, or otherwise has validated the critique set forth in part III of the concurring and dissenting opinion, then I would urge the court at that time to adopt the more absolutist position advocated by Justice D'Auria.